IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2004

## STATE OF TENNESSEE v. DOUGLAS V. KILLINS

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40200141    Michael R. Jones, Judge**

_____

**No. M2004-00341-CCA-R3-CD - Filed January 13, 2005**

_____

This is an appeal as of right from a conviction of second degree murder.  The Defendant, Douglas V. Killins, was indicted for first degree murder and found guilty by jury verdict of the lesser-included offense of second degree murder.  The trial court sentenced the defendant as a Range II violent offender to thirty-eight years to be served in the Department of Correction. On appeal, the Defendant claims there was insufficient evidence for the jury to find him guilty of second degree murder.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J.,  and JOHN EVERETT WILLIAMS, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Douglas V. Killens.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; John Carney, District Attorney General; and Arthur Beiber, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

Ms. Mary Moseley, a thirty-three year old mother of four, was stabbed twenty-three times with a knife in the late evening hours of February 11, 2002, in the back yard of the Defendant's home in Clarksville.  Officer Brant Reed, the first responder to the scene, testified that he found the victim lying on her stomach with her head turned to the side, her mouth half open, and her eyes glazed over. When he asked her what happened, she moved her mouth but no audible response could be heard. Officer Reed lifted the back of the victim's shirt and observed multiple stab wounds. Shortly thereafter the victim was transported to a local hospital by emergency medical personnel, but was pronounced dead on arrival.

The Defendant was indicted by a Montgomery County grand jury in March of 2002 for first degree murder. See Tenn. Code Ann. § 39-13-202(a)(1). A jury trial was held in February of 2003. At trial, the evidence revealed that the victim had been dating the Defendant, and they were together in the back yard of the Defendant's house the night of the crime, smoking crack cocaine. An argument broke out and escalated to a struggle, which ultimately involved a knife with a three to four inch blade, and ended in the victim's death.

Ms. Lakesha Killens, the Defendant's niece, testified that she lived in the house with the Defendant and several other family members. On the night of the murder she heard talking, got out of bed to investigate, and was told by her uncle, Mr. Bert Mayo, to call 911, which she did. Mr. Mayo, the Defendant's brother, testified that he observed the victim smoking crack earlier on the night of the murder. He further testified that he was in his room later that night when for some reason he felt compelled to go look outside the house, and upon doing so he observed someone lying on the ground. He testified that he approached the victim and heard her say "evidently I must have pushed [the Defendant] too far." Mr. Mayo also stated that after instructing his niece to call 911, he told the Defendant to leave until things could calm down. Mr. Mayo added that in the past he had observed the victim with a small pocket knife, which she used to cut up rocks of crack cocaine; that the victim often became violent when she was on crack; and that "she brung it on herself." The victim's sister, Debra Moody, testified that the victim did not use drugs, and never carried a knife.

Officer Reed testified that when he arrived on the scene the victim's jacket was up around her "head, neck, shoulder area." The State presented forensic evidence demonstrating that blood found on the clothes the Defendant was wearing when he surrendered to police the night of the murder belonged to the victim. Additionally, scrapings from under the victim's fingernails contained the Defendant's DNA. Dr. Thomas Deering, who performed the autopsy on the victim, testified that the victim had been drinking and ingesting cocaine shortly before her death. He also testified that the victim had a total of twenty-three knife wounds, including wounds that punctured her lung and severed her subclavian vein. The bulk of the stab wounds formed a pattern across the victims chest and were inflicted in what Dr. Deering described as a "rapid fire" manner. He estimated the victim bled to death "quickly," which he described as less than fifteen minutes. He also testified that the punctures in the victim's jacket suggest it had been pulled over her head during much of the stabbing, which also accounted for the relatively few defensive wounds found on the victim.

At trial the Defendant testified that he and the victim had been smoking crack cocaine for some time that night, but ran out. He was tired and wanted to retire for the evening, but stated the victim wanted more cocaine and demanded that he go out and rob someone to obtain funds for purchasing more drugs. When he refused to comply with her request, the Defendant testified that she became "wild," began screaming, grabbed her pocket knife and "came at me." The Defendant further testified that he managed to take the knife away from her, but she still attacked him, scratching at his eyes. He said he was therefore forced to stab her in defense. The Defendant stated that she continued to attack him and he continued to stab her with the knife until "she stopped struggling."

The Defendant also testified that he had several physical impairments, some the result of multiple fights while incarcerated; that the victim was bigger than he was; and that he feared for his life as he struggled with the victim. The Defendant further stated that he didn't think his stabs would kill her as the knife was "small" and the victim was "fat." Near the conclusion of his testimony, when questioned by the State as to why he did not use less force to defend himself from the victim's alleged attack, the Defendant stated that he "flipped out," and "lost it."

At the conclusion of the trial, the judge instructed the jury on the indicted offense of first degree murder and lesser-included offenses, as well as self-defense. The jury returned a verdict of guilty on the lesser-included offense of second degree murder. See Tenn. Code Ann. § 39-13-210.

A sentencing hearing was held in April of 2003, at the conclusion of which the Defendant was sentenced to thirty-eight years in the Department of Correction as a Range II multiple offender for his convicted offense of "second degree murder."[1] The trial court considered the mitigating factor of the Defendant's troubled mental health history, but concluded that several enhancement factors applied that far outweighed this sole mitigating factor.[2] The trial court found that the Defendant had a previous history of criminal convictions beyond those necessary to establish his appropriate range;[3] he had a history of noncompliance with community release;[4] he used a deadly weapon in the commission of the crime;[5] and the felony was committed while the Defendant was on the release status of probation from a prior felony conviction.[6] Based on these factors, the trial court enhanced the Defendant's sentence from the presumptive mid-point of thirty-two and a half years to thirty-eight years.[7]

---

[1]We note that while the Judgment correctly lists the Defendant's "convicted offense" as second degree murder, it incorrectly cites to the wrong section of the Tennessee Code Annotated. The Judgment should be corrected to cite to Tennessee Code Annotated section 39-13-210.

[2]The trial judge noted that, pursuant to a court order, the Defendant was evaluated by the Middle Tennessee Mental Health Institute prior to trial. Despite the Defendant's lengthy history of mental illness he was found to be both competent to stand trial and ineligible for an insanity defense.

[3]Tenn. Code Ann. § 40-35-114(2).

[4]Tenn. Code Ann. § 40-35-114(9).

[5]Tenn. Code Ann. § 40-35-114(10). The court noted that while this factor applied, it "does not have much weight."

[6]Tenn. Code Ann. § 40-35-114(14).

[7]Concerning sentencing, the Defendant's brief contains the following statement in a footnote: "As a tactical matter, appointed counsel is foregoing any argument related to sentencing." We therefore do not address any issues related to sentencing.

The Defendant filed a motion for a new trial in April of 2003 alleging insufficient evidence, and a hearing on this motion was held by the trial court in January of 2004. The trial judge denied the defendant's motion, stating from the bench:

> Based on all the facts and circumstances I believe that there was more than adequate -- more than adequate proof to show beyond a reasonable doubt that Mr. Killins was guilty of second degree murder. Testimony of the location of the jacket, location of the stab wounds, all certainly establish second degree murder.

The Defendant timely filed a notice of appeal with this Court.

## ANALYSIS

The Defendant asserts that the evidence the State presented at trial was insufficient for any rational trier of fact to have found him guilty of second degree murder. Specifically, the Defendant claims that he should have been found guilty of no more than voluntary manslaughter because he acted out of "passion produced by adequate provocation which would lead a reasonable person to act in an irrational manner." We disagree.

**Sufficiency of Evidence**

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). A person acts knowingly in the context of second degree murder when he is "aware that [his] conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). The lesser charge of voluntary manslaughter also includes the "knowing killing of another" but adds the additional element that the killing was done "in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a).

The Defendant asserts that "either mutual combat or self-defense" is a "key component" of his case. The Defendant also claims that "it is undisputed that an enraged [victim] attacked [the Defendant] with a knife over crack cocaine . . ." and "[the victim] would not quit her attack against [the Defendant]." Furthermore, the Defendant also places significant weight on his brother's testimony that the victim's last words were that she had "pushed" the Defendant "too far," thereby supporting his theory that he had been provoked to act -- in the heat of passion -- in an irrational manner.

The Defendant admitted he stabbed the victim with a knife. The record reveals that the victim's blood was found on the Defendant's clothing; the Defendant's DNA was found under the fingernails of the victim; the autopsy concluded that the victim bled to death as a result of twenty-three knife wounds; and that the victim likely had her jacket pulled up over her head while being stabbed to death. Examining this proof in the light most favorable to the State, we conclude that there was sufficient evidence to sustain the Defendant's conviction for second degree murder.

Moreover, the Defendant's claim that the mutual combat he engaged in with the victim requires his conduct to be considered either a case of self-defense or voluntary manslaughter also fails. We note that the jury was expressly charged with instructions on both self-defense and voluntary manslaughter and rejected both, convicting the Defendant of second degree murder. As stated above, this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.2d at 236. Additionally, the only evidence of self-defense or mutual combat in the record stems from the Defendant's own testimony. Questions of the credibility of witnesses are also left to the jury. See id. The Defendant has failed to carry his burden of demonstrating that no rational trier of fact could have reached the conclusion of guilt of second degree murder beyond a reasonable doubt.

Both this Court and the Tennessee Supreme Court have held in factually similar situations that the State's proof was sufficient to support a conviction of second degree murder despite evidence of threats and mutual combat. See State v. Williams, 38 S.W.3d 532, 539 (Tenn. 2001) (evidence was sufficient to support second degree murder even though the victim engaged in mutual combat with the defendant); State v. Meade, 942 S.W.2d 561, 564-65 (Tenn. Crim. App. 1996) (evidence was sufficient to support second degree murder, despite defendant's claim of self-defense or voluntary manslaughter due to provocation, when the number of gunshot wounds were considered, some entering the back of the victim's body, as well as the fact that the only evidence of self-defense or adequate provocation was the defendant's own testimony that he felt threatened).

We have no hesitation in finding that sufficient evidence was presented for a rational jury to find beyond a reasonable doubt that the Defendant knowingly killed this victim. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed as to the Defendant's conviction of second degree murder. This case is remanded to the trial court for entry of a corrected judgment reflecting that the conviction for second degree murder is pursuant to Tennessee Code Annotated section 39-13-210.

_____
DAVID H. WELLES, JUDGE